# Exhibit 2

# SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS
## OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30

| 1. REQUISITION NUMBER | PAGE 1 OF |
|---|---|
| PSAJ-03-0097 | 1 |

| 2. CONTRACT NO. | 3. AWARD/EFFECTIVE DATE | 4. ORDER NUMBER | 5. SOLICITATION NUMBER | 6. SOLICITATION ISSUE DATE |
|---|---|---|---|---|
| MS-03-C-0008 | NOV 0 1 2002 | | MS-02-R-0012 | 5-07-02 |

**7. FOR SOLICITATION INFORMATION CALL:**

| a. NAME | b. TELEPHONE NUMBER (No collect calls) | 8. OFFER DUE DATE/LOCAL TIME |
|---|---|---|
| TIMOTHY K. YOUNG | (405) 680-3400 | 4:30PM  10-07-02 |

**9. ISSUED BY**   CODE

U.S. MARSHALS SERVICE
JPATS Business Management Office
5900 Air Cargo Road
Oklahoma City OK 73159-1198

**10. THIS ACQUISITON IS**

[X] UNRESTRICTED
[ ] SET ASIDE:       % FOR   [X] SEE SCHEDULE
[ ] SMALL BUSINESS
[ ] SMALL DISAV. BUSINESS
[ ] 8(A)

SIC NAIC: 481211
SIZE STANDARD: 1,500 Emp

**11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED**

**12. DISCOUNT TERMS**

13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700)

13b. RATING

**14. METHOD OF SOLICITATION**
[ ] RFQ   [ ] IFB   [X] RFP

| 5. DELIVER TO | CODE |
|---|---|
| EE SECTION I,B. THE SCHEDULE, PARAGRAPH 5. | |

**16. ADMINISTERED BY**   CODE

BLOCK #9

| a. CONTRACTOR CODE | FACILITY CODE |
|---|---|
| 5L Aviation Services | |
| 700 Rio Grande NW, Suite 1 | |
| Albuquerque, NM  87107 | |

TELEPHONE NO.

17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

**18a. PAYMENT WILL BE MADE BY**   CODE

U.S. MARSHALS SERVICE
JPATS Business Management Office
5900 Air Cargo Road,Oklahoma City, OK 73159

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED   [ ] SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | See Section I - Pricing | | | | |

(Attach Additional Sheets as Necessary)

ACCOUNTING AND APPROPRIATION DATA
SEE SECTION I,B. THE SCHEDULE, PARAGRAPH 2.

| 26. TOTAL AWARD AMOUNT (For Govt. Use Only) |
|---|
| $288,666,219.00 |

25. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4, FAR 52.212-3 AND 52.212-5 ARE ATTACHED. ADDENDA [ ] ARE [ ] ARE NOT ATTACHED

27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4. FAR 52.212-5 IS ATTACHED. ADDENDA [X] ARE [ ] ARE NOT ATTACHED

[ ] 28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN ___ COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED HEREIN.

[X] 29. AWARD OF CONTRACT: REFERENCE _____ OFFER DATED ___. YOUR OFFER ON SOLICITATION (BLOCK 5) INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS: See Section I B.2.

| 30a. SIGNATURE OF OFFEROR/CONTRACTOR | 31a. UNITED STATES OF AMERICA (SIGNATURE OF CONTRACTING OFFICER) |
|---|---|
| *signature* | *Timothy K. Young* |

| 30b. NAME AND TITLE OF SIGNER (Type or print) | 30c. DATE SIGNED | 31b. NAME OF CONTRACTING OFFICER (Type or print) | 31c. DATE SIGNED |
|---|---|---|---|
| Allen E. Weh / President | 4 OCT 02 | TIMOTHY K. YOUNG | NOV 0 1 2002 |

32a. QUANTITY IN COLUMN 21 HAS BEEN

[ ] RECEIVED   [ ] INSPECTED   [ ] ACCEPTED, AND CONFORMS TO THE CONTRACT, EXCEPT AS NOTED

| 32b. SIGNATURE OF AUTHORIZED GOVT. REPRESENTATIVE | 32c. DATE |
|---|---|
| | |

42a. I CERTIFY THIS ACCOUNT IS CORRECT AND PROPER FOR PAYMENT

| 41a. SIGNATURE AND TITLE OF CERTIFYING OFFICER | 41c. DATE |
|---|---|
| | |

| 33. SHIP NUMBER | 34. VOUCHER NUMBER | 35. AMOUNT VERIFIED CORRECT FOR |
|---|---|---|
| [ ] PARTIAL [ ] FINAL | | |

36. PAYMENT
[ ] COMPLETE [ ] PARTIAL [ ] FINAL

| 38. S/R ACCOUNT NUMBER | 39. S/R VOUCHER NUMBER | 40. PAID BY |
|---|---|---|
| | | |

37. CHECK NUMBER

| 42a. RECEIVED BY (Print) | | |
|---|---|---|
| 42b. RECEIVED AT (Location) | | |
| 42c. DATE REC'D (YY/MM/DD) | 42d. TOTAL CONTAINERS | |

AUTHORIZED FOR LOCAL REPRODUCTION

SEE REVERSE FOR OMB CONTROL NUMBER AND

*\*Note: Volume I of the Offeror's Proposal, dated 30 July, 2002, including all attachments and with all revisions provided as of 20 September, 2002, is hereby incorporated by reference.*

**SECTION I**

**A.** - SF1449, Solicitation/Contract for Commercial Items - The United States Marshals Service desires to lease with maintenance a quantity of 6 late model large Jet Passenger/Transport aircraft in accordance with Section II, Part A, Specification for Replacement Large Transport Aircraft, and Section II, Part B, Maintenance Requirements Document. Three pricing options are provided for your preference and you may propose one option, two options, or all three options. Each proposal is to be for a maximum period of 10 (ten) years, however the actual number of years to be awarded will be established in accordance with paragraph 3, entitled Contract Award, of Section VII, Addendum to FAR 52.212-2, Evaluation – Commercial Items. Please provide monthly prices for the lease of each aircraft for ten years. The three pricing options are provided separately as follows. Pricing Option A is a ten year lease using a multi-year approach with cancellation ceilings. Pricing Option B is a five year lease using a multi-year approach with cancellation ceilings and five one-year options that may be unilaterally exercised by the government. There are no cancellation ceilings for years six through ten of Pricing Option B. Pricing Option C is a one year lease with nine, one-year options that may be unilaterally exercised by the government. There are no cancellation ceilings for Pricing Option C.

### 3. CANCELLATION CEILING

For the purposes of Schedule B. 1. Option A and Option B, the resulting contract awarded will be a Multi-Year contract and in accordance with FAR 52.217-2, Cancellation Under Multi-Year Contracts, the following cancellation ceiling is hereby established. "Cancellation ceiling" means the maximum cancellation charge that the contractor can receive in the event of cancellation. Lease payments shall be in accordance with the contractor lease prices established in the Schedule, SECTION I, B.1. Lease funds shall be obligated by the government Fiscal year by CLIN established in the Schedule, SECTION I, B.1. **Cancellation of this contract occurs, if the Contracting Officer provides written notification to the contractor that funds are not available 60 days prior to the end of the current government fiscal year in which this contract is being performed, or the Contracting Officer fails to notify the Contractor that funds are available for performance of the succeeding program year.** For the purpose of cancellation the cancellation ceilings are those established in the Schedule, SECTION, B.1. They are established by CLIN/aircraft allowing for cancellation of individual CLINs/aircraft that might be necessitated due to a single JPATS customer failing to receive appropriated funding for its prisoner movements.

### 4. REDUCTION OF MULTI-YEAR REQUIREMENT

If the Government determines before award that only the first program year requirements are needed, the Government shall evaluate offers and make award solely on the basis of offers on that first year. Consistent with the evaluation criteria established within Section VII of this solicitation, award shall not be made on less than the first program year requirements.

### 5. DELIVERIES OR PERFORMANCE

The period of performance under this contract shall be for a period of not less than 6 years and no more than 10 years. Offerors should propose prices for each CLIN based on a ten year period of performance. The length of the lease for each aircraft/CLIN will be established based on the date of delivery of the aircraft. The contractor should propose a delivery date for each CLIN for which he proposes to deliver an aircraft. The Government anticipates a need for delivery to

commence with two aircraft in the first quarter of FY2003 (Oct – Dec, 2002) and the remaining four aircraft to be delivered in the second quarter of FY2003 (Jan – Mar, 2003).

Deliver Aircraft To:

2 – Aircraft to U.S. Marshals Service Facility, Will Rogers Airport, Oklahoma City, OK
2 – Aircraft to U.S. Marshals Service Facility, Williams Gateway Airport, Mesa, AZ
2 – Aircraft to U.S. Marshals Service Facility, England Airpark, Alexandria, LA

## 6. OPERATING CONDITIONS FOR LEASED AIRCRAFT

The aircraft leased under this contract will each fly approximately 1440 hours per year and they will be rotated between the three USMS operational sites. The contractor will be required to provide all maintenance in accordance with Section II, Part B, Maintenance Requirements Document, that is part of this solicitation.

SECTION II., Part A - Specification for Replacement Large Transport Aircraft

### A. Introduction

The US Marshals Service operates a fleet of large transport aircraft to transport prisoners and criminal aliens throughout the United States and to selected countries in Latin America. The aircraft are operated and maintained to the standards of Federal Aviation Administration Regulation (FAAR) Part 91 and are based at three locations – Oklahoma City, OK, Alexandria, LA and Mesa, AZ. The US Marshals Service intends to replace its current aging, mixed fleet of large transport aircraft with 6 late model aircraft. To meet the requirements of the US Marshals Service for standardization, all new aircraft will be of the same model with the same primary avionics, instrument displays and engines. As discussed below, some of the aircraft offered may have a different model "dash number" (for example Boeing 737-300 and Boeing 737-400, or MD-83 through MD-88). However, all aircraft offered must meet the requirements discussed below. Where specific makes or models of aircraft or equipment are mentioned in this specification, the offeror may propose any other aircraft or equipment that has equivalent capabilities and can meet the requirements of the following specification.

### B. General:

The aircraft offered must be certificated for day, night, VFR and IFR operations as well as flight into known icing. The aircraft must also be equipped for over-water flight. The aircraft offered must be equipped so that they do not require external assistance to start their engines, heat/cool the cabin, load/unload luggage and load/unload passengers.

B.1. All aircraft must:
   a. Have FAAR Part 36, Stage 3 approval without the use of hush kits
   b. Have a US FAA Standard Certificate of Airworthiness at the time of delivery to the US Marshals Service
   c. Have Class C fire detection and suppression systems installed in all cargo compartments
   d. Comply with all applicable Airworthiness Directives and mandatory Service Bulletins at the time of delivery to the US Marshals Service
   e. Have all maintenance records and log books
   f. Have all standard documentation such as flight manuals, maintenance manuals, wiring diagrams, as well as maintenance documentation for all installed equipment and options.
   g. Be on a manufacturer or FAA approved maintenance schedule at the time of delivery to the Marshals Service.
   h. Have no damage history (except as disclosed in offer). Aircraft without damage history are preferred. Aircraft with minor damage history will be considered.
   i. Have Airframes and engines of the same make and model, except as discussed below
   j. Have identical instrument panels and major avionics suites
      (Required is no significant difference. Desired is identical)

k. Have a manufacture date no later than 1990 and have less than 30,000 cycles. Aircraft less than 10 years old are desired. (Aircraft manufactured earlier than 1990 will not be excluded, but will be given a lower rating in the evaluation process)

l. It is desired that each aircraft have an intermediate maintenance check ("C" check or equivalent) accomplished immediately prior to delivery of the aircraft to the US Marshals Service.

### C. Make and Model:

C.1. All aircraft and engines offered by a vendor must be the same model from the same manufacturer. A number of the aircraft makes/models that may be proposed to meet this specification are available in different "dash numbers" (for example: Boeing 737-300 and 737-400 or MD-83 and MD-88). Similarly, engines installed on these aircraft can have different "dash numbers" (for example PW JT8D-217A and –219, or CFM 56-3B1 and –3C1). An offeror may propose a mix of "dash numbers" provided that:

C.1.a. No more than two different aircraft "dash numbers" with no more than two different engine "dash numbers are offered (for example Boeing 737-300 with CFM 56-3B2 and Boeing 737-400 with CFM 56-3C1)

C.1.b. Either 2 or 3 of one dash number and 4 or 3 of the other dash number are offered (for example (4) MD-83 with –219 engines and (2) MD-88 with –219 engines)

C.1.c. The preceding represents the minimum requirements. The desired fleet consists of all aircraft and engines with the same dash numbers.

### D. Avionics:

D.1. The aircraft must be equipped for Category II landings.

D.2. The aircraft must be equipped with the following avionics:

Minimum required:
a. Dual VHF Communication system (8.33 KHz spacing is desired)(Three is desired)
b. Dual VHF Navigation system with ILS and DME (Three is desired)
c. Dual ADF Navigation system
d. Dual IRS Navigation system with single GPS (Dual IRS & Dual GPS is desired)
e. Flight guidance system/Autopilot
f. Dual Flight Management System
g. Dual air data systems
h. Enhanced GPWS
i. TCAS II (TCAS II with Change 7 must be provided by Dec. 2004)
j. Color weather radar
k. Encoding altimeter
l. Radio altimeter (Dual is desired)
m. Digital Flight data recorder
n. Digital Cockpit voice recorder
o. RVSM Capable ( Must be certified by Dec. 2004)

D.3. Desired equipment and displays:

    a. EFIS displays for Captain and Copilot ADI and HSI
    b. Electronic engine and system displays
    c. Single HF Communication system

## E. Equipment:

E.1. The aircraft must have the following equipment installed:

    a. Auxiliary Power Unit suitable for ground heating/cooling and capable of maintaining cabin temperature between 60 °F and 80 °F when outside temperature is between 0 °F and 110 °F.
    b. Thrust reversers
    c. Self contained "airstair" (Minimum of one required, two are desired)
    d. All lavatories must be equipped for external servicing
    e. Single point refueling

## F. Cabin configuration:

F.1. The cabin of each aircraft will conform to the following specifications:

    a. Minimum seating capacity for 140 passengers using the seating pitch and other cabin furnishings and equipment as outlined below.
    b. All seats shall be standard economy class airline seats facing forward. It is desired that the first row of seats at the forward end of the cabin and the seats at the forward edge of any mid-cabin emergency exits shall face aft.
    c. A minimum pitch of between 31 and 32 inches between forward facing seats shall be used
    d. If aft facing seats are offered as discussed above, a minimum distance of 48 inches between the front bolsters of facing rows of seats shall be used
    e. Standard "3 and 3" or "3 and 2" seating, as dictated by the fuselage cross section, shall be used
    f. All passenger seats shall be equipped with approved lap-type seat belts and approved flotation-type seat cushions.
    g. Above each row of passenger seats there will be a passenger service module containing individual reading lamps, conditioned air vents and oxygen mask
    h. Seating for at least 3 flight attendants using standard airline lap and shoulder belts
    i. A minimum of two enclosed, flushing lavatories, each with a small washbasin, shall be installed, one at the forward end of the cabin and one at the aft end. A total of three lavatories (one forward and two aft) are desired.
    j. A minimum of one galley shall be installed at the forward end of the cabin. The galley shall at least have the following: fresh water, coffee maker, oven, ice compartment, storage for box lunches and soft drinks. The size of the galley needs to be sufficient to support up to 16 guards and 2 flight crew for a 14-hour duty day.
    k. Standard overhead baggage bins the length of the cabin shall be provided on both sides of the cabin.
    l. Emergency in floor lighting in accordance with FAAR Part 121 shall be installed.
    m. The cabin shall be equipped with an operable PA system that can be activated from the cockpit or flight attendant station.

Section II, Part A, Page 8 of 1

n. All cabin passenger windows (inner, outer and decorative) shall be free from significant scratching and have operable shades
o. Standard cabin sound insulation and airline cabin headliner, wall and floor covering will be installed.
p. All seating, equipment, cabinets, interior furnishings, headliner, wall covering and floor covering shall be in good condition with no obvious damage.
q. All cabin seating, equipment, furnishings, carpeting, headliner and wall covering will be installed, certificated, treated with fire retardant, etc. in accordance with the applicable portions FAAR Part 121.

## G. Performance and Range:

G.1. The aircraft must be able to meet the following range and performance requirements:

a. Trip 1. Distance One-way:
| | |
|---|---|
| | 925 NMi |
| Headwind | 60 KTS |
| Passengers | 140 |
| Airport runway length | 12,000 Ft |
| Airport elevation | 5,400 |
| Airport temperature | 90 'F |

b. Trip 2. Distance One-way:
| | |
|---|---|
| | 2000 NMi |
| Headwind | 55 KTS |
| Passengers | 140 |
| Airport runway length | 11,000 Ft |
| Airport elevation | SL |
| Airport temperature | 84 'F |

c. Trip 3. Distance One-way:
| | |
|---|---|
| | 2000 NMi |
| Headwind | 0 KTS |
| Passengers | 140 |
| Airport runway length | 9,800 Ft |
| Airport elevation | 1,300 |
| Airport temperature | 90 'F |

d. Parameters applicable to all trips:
| | |
|---|---|
| Passenger weight | 200 Lbs each |
| Fuel density | 6.7 Lbs/Gallon |
| Reserve fuel | Contingency fuel = 5% of block fuel + Missed approach at destination + Climb, cruise and descent to 200 NM alternate + Hold 30 minutes at 1500 Ft |
| Maneuver fuel allowances: | Engine start and taxi out – 9 minutes Takeoff to 1500 ft – 2 minutes Approach and Landing – 4 minutes Taxi in – 5 minutes |

### H. Aircraft Tamper-proofing:

The contractor is required to make the following changes to the cabin interior in order to tamper-proof the aircraft:

H.1.  Remove all tray tables from the aircraft.

H.2.  Lock all seat backs in the up-right position.

H.3.  Remove, seal and rivet all ash trays.

### I. Exterior:

I.1.  The exterior paint scheme must be a light color (white preferred) with contrasting striping. The paint schemes need not be the same for all aircraft. The paint schemes cannot be similar to any of the major US airlines.

I.2.  The assigned registration number of the aircraft ("N" number) will be applied to the aircraft in accordance with FAA regulations in effect at the time of delivery.

I.3.  The exterior paint, metal surfaces and cockpit and cabin windows must be in good condition with no obvious damage

## SECTION II, Part B., MAINTENANCE REQUIREMENTS DOCUMENT

1. **INTRODUCTION:** This document is part of a unique approach to acquisition of Contractor Logistics Support which bears some explanation. The Government is not furnishing a Statement of Work (SOW). It is our expectation that each offeror will furnish its proposed SOW, hereafter referred to as a Contractor's SOW (CSOW), based on its own corporate practice which will subsequently be accepted by the Government as a part of this source selection. We are supplying this Maintenance Requirements Document, in lieu of a traditional specification, which delineates the minimum Government requirements, which are subsequently to be used by the offeror in generating its CSOW for maintenance/logistics support of the aircraft that are being leased to the government. The USMS is a 24 hour per day, 7 day per week operation at all three of its operational sites. Typically JPATS missions are flown Monday through Friday as follows:

> Oklahoma City, OK: From 0730 to 1830
> Alexandria, LA: From 0730 to 1830
> Mesa, AZ: Day Mission From 0800 to 1730
>       Night Mission From 1600 to 0130

Weekend missions are flown on an as needed basis with the following frequencies:

> Oklahoma City, OK: 6 per year
> Alexandria, LA:   1 per month
> Mesa, AZ:     1 per month

The USMS estimates that the maximum number of hours to be flown per aircraft will be 1,440. Weekly schedules will be supplied to the contractor to assist in the scheduling of personnel and the planning of maintenance for the aircraft. Schedules are supplied on Thursday the week prior to the missions.

2. **CONTRACTOR'S STATEMENT OF WORK (CSOW):** The offerors approach to the execution of his maintenance and logistics support programs shall be clearly delineated in their CSOW. <u>The CSOW shall become an attachment to the contract at time of award.</u> The CSOW shall address the level and type(s) of maintenance and logistics support that will be provided at all three of the United States Marshals Service operational sites. Additionally, it should also address launch and recovery, safety, and security procedures, specific plans for the accomplishment of heavy maintenance checks, major repairs, Airworthiness Directives (ADs), and Service Bulletins (SBs), and inspection buy-back, return to service, maintenance release, and deferral procedures. The offerors CSOW shall include the offerors FAA approved maintenance program, such as a manufacturer's Master Planning Document (MPD) or an approved Continuous Airworthiness Maintenance Program (CAMP) for certificated operators, and the method for tracking and documenting maintenance tasks, such as Daniels, CAMPS, etc. The offeror's General Maintenance Manual (GMM), or equivalent, i.e. Maintenance Policy

and Procedure Manual, along with their approved Minimum Equipment List (MEL) will be provided as attachments to the CSOW. All documents that are included shall be listed in a fashion sufficient to properly identify the revision that will be used and shall include appropriate tailoring.

## 3. GOVERNMENT REQUIREMENTS:

A. Dispatch Reliability Rate: The contractor shall provide all personnel and resources to maintain an aircraft dispatch reliability rate of not less than 95%. The dispatchability of the aircraft will be determined in accordance with the minimum equipment list (MEL) for that aircraft. The MEL will be customized to meet the peculiar needs of the USMS, through face to face negotiations during the discussions phase of the solicitation. The aircraft dispatch reliability rate will be tracked by operational site and will be calculated using the following formula:

Dispatch Reliability Rate = $\frac{\text{Scheduled Missions} - \text{Lost Missions(due to maintenance)}}{\text{Scheduled Missions}}$

*Lost Missions will be defined as cancellations due to maintenance, or takeoff delays that exceed two hours in length that are caused by maintenance. Missions aborted during any leg of the mission, if the abort is due to maintenance, will also be considered to be a lost mission.* The contractor will also identify lost missions due to maintenance as to whether they are a result of maintenance in progress that could not be completed in time or if the lost mission is due to not being able to supply the needed part in time. The abbreviations NMCM and NMCS will be used as follows: NMCM = Not Mission Capable Maintenance, NMCS = Not Mission Capable Supply. The contractor will also separately report missions lost due to maintenance after the first leg of the scheduled mission. This report will be a monthly report by aircraft. The dispatch reliability rate will be reported weekly by aircraft with a monthly written summary report by operational site and a monthly fleet wide dispatch reliability rate. These reports may be in contractor format. *At the end of each month the contractor and the government will meet to discuss and mutually establish the final Dispatch Reliability Rate for each aircraft.*

B. Replacement Aircraft: The contractor will be responsible for providing replacement aircraft whenever an aircraft is down for scheduled maintenance. The USMS will provide flight crews and fuel to ferry the aircraft to and from the maintenance facility (in the continental United States) for scheduled maintenance visits. The contractor will be responsible for the crews and expenses for unscheduled maintenance visits to and from their selected maintenance supplier/facility. *If a mission is identified as a lost mission per the definition of lost mission in the paragraph A. above,* the contractor must at his expense ensure that the aircraft is repaired or replaced with a like aircraft prior to the next scheduled mission for that aircraft. If the contractor provides a replacement aircraft he will be responsible for all ferrying costs and for providing the flight crew to ferry the aircraft. Failure to provide an aircraft for a scheduled mission that follows a lost mission

will result in the assessment of liquidated damages as prescribed in the Contract Clause Section III., par. 10, entitled "Liquidated Damages".

C. **Line Servicing/Line Maintenance:** The contractor shall provide at each operational site, full Line Servicing support to include, but not limited to, routine aircraft servicing, such as oxygen, nitrogen, oil, fuel, hydraulic, lavatory and water servicing, aircraft interior and exterior cleaning, launch and recovery services, aircraft towing and positioning, ground support equipment operation, pre-flight and post-flight support, and foul weather services such as deicing. Additionally, the contractor shall provide at each operational site, full Line Maintenance support to include, but not be limited to, routine inspections such as pre-flight and post-flight inspections, periodic (calendar and hourly) inspections and events, to include "A" and "B" checks, evaluating, troubleshooting and correcting all pilot reported discrepancies.

D. **Heavy Maintenance Visits:** The contractor shall provide all heavy maintenance, major inspections, to include "C" and "D" checks, major repairs, extensive Airworthiness Directives (ADs), extensive Service Bulletins (SBs), alterations, modifications, Supplemental Type Certificates (STCs), strip and paint, in an FAA approved Certificated Repair Station (CRS) with all applicable certifications. The contractor will provide advance notification of the need to move an aircraft for a heavy maintenance visit. Notification shall be made to the Contracting Officer five working days before the scheduled heavy maintenance visit.

E. **Offsite Maintenance Support:** Due to the type of missions performed by the USMS, any time an aircraft breaks down while it is away from one of the three operational sites, it is considered an emergency. The contractor shall have a plan with support available at any of the typical stops where the USMS flies for repairing/recovering a downed aircraft. Attachment VIII lists the typical stops used by the USMS in flying their missions. The contractor will provide a single point of contact that will initiate support activities when notified by the contracting officer or his designated representative of a downed aircraft.

F. **Facilities:** The USMS shall provide the facilities as listed and identified in Attachments II, III, and IV for the contractor's use on a non-interference basis. The contractor will be responsible for cleaning and general maintenance upkeep of these facilities. The USMS will supply utilities and provide for phone line service, while the contractor will be responsible for all phone/fax equipment.

G. **Government Furnished Equipment:** The USMS shall provide common Ground Support Equipment (GSE) as identified by site in Attachments V, VI, and VII. The contractor will have full use of this equipment on a non-interference basis and he will be responsible for maintenance/calibration/certification of this equipment for the life of this contract. The contractor will provide a monthly status report on all GSE in his possession. The report may be in contractor format.

**H. Over and Above:** The contractor may be requested by the contracting officer to perform work on the aircraft that is outside of the scope of the defined maintenance required herein. In those instances the work will be performed in accordance with Section III. – Contract Terms and Conditions, clause number 16. entitled "Over and Above Work" and the price for that effort will be negotiated as a firm fixed price.

**I. Additional Data:** The contractor shall supply the Contracting Officer each month with a list of Service Bulletins (SBs) and Airworthiness Directives (ADs) that are applicable to the leased aircraft. The list will include an indication of the contractor's intent as to whether he will comply with the SBs, and it will provide a proposed schedule for accomplishment of the ADs. This report may be in contractor format.

Contract MS-03-C-0008

# SECTION III. - CONTRACT TERMS AND CONDITIONS

52.212-4 — Contract Terms and Conditions — Commercial Items.

As prescribed in 12.301(b)(3), insert the following clause:

Contract Terms and Conditions -- Commercial Items (Feb.2002)

(a) Inspection/Acceptance. The Contractor shall only tender for acceptance those items that conform to the requirements of this contract. The Government reserves the right to inspect or test any supplies or services that have been tendered for acceptance. The Government may require repair or replacement of nonconforming supplies or re-performance of nonconforming services at no increase in contract price. The Government must exercise its post-acceptance rights --

(1) Within a reasonable time after the defect was discovered or should have been discovered; and

(2) Before any substantial change occurs in the condition of the item, unless the change is due to the defect in the item.

(b) Assignment. The Contractor or its assignee may assign its rights to receive payment due as a result of performance of this contract to a bank, trust company, or other financing institution, including any Federal lending agency in accordance with the Assignment of Claims Act (31 U.S.C.3727). However, when a third party makes payment (e.g., use of the Government wide commercial purchase card), the Contractor may not assign its rights to receive payment under this contract.

(c) Changes. Changes in the terms and conditions of this contract may be made only by written agreement of the parties.

(d) Disputes. This contract is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613). Failure of the parties to this contract to reach agreement on any request for equitable adjustment, claim, appeal or action arising under or relating to this contract shall be a dispute to be resolved in accordance with the clause at FAR 52.233-1, Disputes, which is incorporated herein by reference. The Contractor shall proceed diligently with performance of this contract, pending final resolution of any dispute arising under the contract.

(e) Definitions. The clause at FAR 52.202-1, Definitions, is incorporated herein by reference.

(f) Excusable delays. The Contractor shall be liable for default unless nonperformance is caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence such as, acts of God or the public enemy, acts of the Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, unusually severe weather, and delays of common carriers. The Contractor shall notify the Contracting Officer in writing as soon as it is reasonably possible after the commencement of

Contract MS-03-C-0008

any excusable delay, setting forth the full particulars in connection therewith, shall remedy such occurrence with all reasonable dispatch, and shall promptly give written notice to the Contracting Officer of the cessation of such occurrence.

(g) Invoice.

(1) The Contractor shall submit an original invoice and three copies (or electronic invoice, if authorized) to the address designated in the contract to receive invoices. An invoice must include —

(i) Name and address of the Contractor;

(ii) Invoice date and number;

(iii) Contract number, contract line item number and, if applicable, the order number;

(iv) Description, quantity, unit of measure, unit price and extended price of the items delivered;

(v) Shipping number and date of shipment, including the bill of lading number and weight of shipment if shipped on Government bill of lading;

(vi) Terms of any discount for prompt payment offered;

(vii) Name and address of official to whom payment is to be sent;

(viii) Name, title, and phone number of person to notify in event of defective invoice; and

(ix) Taxpayer Identification Number (TIN). The Contractor shall include its TIN on the invoice only if required elsewhere in this contract.

(x) Electronic funds transfer (EFT) banking information.

(A) The Contractor shall include EFT banking information on the invoice only if required elsewhere in this contract.

(B) If EFT banking information is not required to be on the invoice, in order for the invoice to be a proper invoice, the Contractor shall have submitted correct EFT banking information in accordance with the applicable solicitation provision, contract clause (e.g., 52.232-33, Payment by Electronic Funds Transfer-Central Contractor Registration, or 52.232-34, Payment by Electronic Funds Transfer-Other Than Central Contractor Registration), or applicable agency procedures.

(C) EFT banking information is not required if the Government waived the requirement to pay by EFT.

(2) Invoices will be handled in accordance with the Prompt Payment Act (31 U.S.C. 3903) and Office of Management and Budget (OMB) prompt payment regulations at 5 CFR part 1315.

(h) Patent indemnity. The Contractor shall indemnify the Government and its officers, employees and agents against liability, including costs, for actual or alleged direct or contributory infringement of, or inducement to infringe, any United States or foreign patent, trademark or copyright, arising out of the performance of this contract, provided the Contractor is reasonably notified of such claims and proceedings.

(i) Payment. Payment shall be made for items accepted by the Government that have been delivered to the delivery destinations set forth in this contract. The Government will make

Contract MS-03-C-0008

payment in accordance with the Prompt Payment Act (31 U.S.C. 3903) and OMB prompt payment regulations at 5 CFR part 1315. In connection with any discount offered for early payment, time shall be computed from the date of the invoice. For the purpose of computing the discount earned, payment shall be considered to have been made on the date which appears on the payment check or the specified payment date if an electronic funds transfer payment is made.

(j) Risk of loss. Unless the contract specifically provides otherwise, risk of loss or damage to the supplies provided under this contract shall remain with the Contractor until, and shall pass to the Government upon:

    (1) Delivery of the supplies to a carrier, if transportation is f.o.b. origin; or

    (2) Delivery of the supplies to the Government at the destination specified in the contract, if transportation is f.o.b. destination.

(k) Taxes. The contract price includes all applicable Federal, State, and local taxes and duties.

(l) Termination for the Government's convenience. The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience. In the event of such termination, the Contractor shall immediately stop all work hereunder and shall immediately cause any and all of its suppliers and subcontractors to cease work. Subject to the terms of this contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination. The Contractor shall not be required to comply with the cost accounting standards or contract cost principles for this purpose. This paragraph does not give the Government any right to audit the Contractor's records. The Contractor shall not be paid for any work performed or costs incurred which reasonably could have been avoided.

(m) Termination for cause. The Government may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance. In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted, and the Contractor shall be liable to the Government for any and all rights and remedies provided by law. If it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience.

(n) Title. Unless specified elsewhere in this contract, title to items furnished under this contract shall pass to the Government upon acceptance, regardless of when or where the Government takes physical possession.

(o) Warranty. The Contractor warrants and implies that the items delivered hereunder are merchantable and fit for use for the particular purpose described in this contract.

Contract MS-03-C-0008

(p) Limitation of liability. Except as otherwise provided by an express warranty, the Contractor will not be liable to the Government for consequential damages resulting from any defect or deficiencies in accepted items.

(q) Other compliances. The Contractor shall comply with all applicable Federal, State and local laws, executive orders, rules and regulations applicable to its performance under this contract.

(r) Compliance with laws unique to Government contracts. The Contractor agrees to comply with 31 U.S.C. 1352 relating to limitations on the use of appropriated funds to influence certain Federal contracts; 18 U.S.C. 431 relating to officials not to benefit; 40 U.S.C. 327, et seq., Contract Work Hours and Safety Standards Act; 41 U.S.C. 51-58, Anti-Kickback Act of 1986; 41 U.S.C. 265 and 10 U.S.C. 2409 relating to whistleblower protections; 49 U.S.C. 40118, Fly American; and 41 U.S.C. 423 relating to procurement integrity.

(s) Order of precedence. Any inconsistencies in this solicitation or contract shall be resolved by giving precedence in the following order:
    (1) The schedule of supplies/services.
    (2) The Assignments, Disputes, Payments, Invoice, Other Compliances, and Compliance with Laws Unique to Government Contracts paragraphs of this clause.
    (3) The clause at 52.212-5.
    (4) Addenda to this solicitation or contract, including any license agreements for computer software.
    (5) Solicitation provisions if this is a solicitation.
    (6) Other paragraphs of this clause.
    (7) The Standard Form 1449.
    (8) Other documents, exhibits, and attachments.
    (9) The specification.

(End of Clause)

## Section III.  ADDENDUM TO 52.212-4 - CONTRACT TERMS AND CONDITIONS - COMMERCIAL ITEMS (MAY 2001)

NOTICE: Pursuant to FAR 52.252-1, "SOLICITATION PROVISIONS INCORPORATED BY REFERENCE," the following provisions are incorporated herein by reference.

| | | |
|---|---|---|
| FAR 52.228-5 | Insurance—Work On A Government Installation | (JAN 1997) |
| FAR 52.232-18 | Availability of Funds | (APR 1984) |
| FAR 52.237-2 | Protection of Government Buildings, Equipment, and Vegetation | (APR 1984) |

Contract MS-03-C-0008

FAR 52.245-2    Government Property (Fixed-Price Contracts).    (DEC 1989)

FAR 52.245-3    Identification of Government-Furnished Property    (APR 1984)
    Pursuant to the "Government Property" clause herein, the Government will furnish the item(s) of property below as Government-Furnished Property to the Contractor, F.O.B. origin, for use in performance of this contract.
    SEE:  Attachments II, III, IV, V, VI, and VII.

FAR 52.245-19    Government Property Furnished "As Is"    (APR 1984)

## 1.  HOLD HARMLESS AND INDEMNIFICATION AGREEMENT.

The Contractor shall save and hold harmless and indemnify the Government against any and all liability claims and costs of any person or persons, and for loss or damage to any Contractor property or property owned by a third party, occurring in connection with or in any way incident to or arising out of the occupancy, use, service, operation, or performance of work under the terms of this contract, resulting in whole or in part from the negligent acts or negligent omissions of the Contractor, any subcontractor, or any employee, agent, or representative of the Contractor or subcontractor.

### Government's Right of Recovery.

Nothing in the above paragraphs shall be considered to preclude the Government from receiving the benefits of any insurance the Contractor may carry which provides for the indemnification of any loss or destruction of, or damage to property in the custody and care of the Contractor, where such loss, destruction or damage is to Government property.  The Contractor shall do nothing to prejudice the Government's right to recover against third parties for any loss, destruction of, or damage to Government property, and upon request of the Contracting Officer shall, at the Government's expense, furnish to the Government all reasonable assistance and cooperation (including assistance in the prosecution of suit and the execution of instruments of assignment in favor of the Government) in obtaining recovery.

### Government Liability.

The Government shall not be liable for any injury to the Contractor's property unless such injury or damage is due to negligence on the part of the Government and is recoverable under the Federal Torts Claim Act, or pursuant to other Federal Statutory Authority.

## 2.  AVIATION INSURANCE COVERAGE

Since the USMS will be self insuring for this aircraft lease acquisition and the USMS will not indemnify the lessor in any way, it is possible that the contractors may wish to purchase insurance, such as Hull Insurance, War Risk Insurance, and Foreign Object Damage Insurance,

Contract MS-03-C-0008

in sufficient amounts to mitigate the risk that they will incur as the lessor. If insurance is included in the fixed price of the aircraft leases, the lessor will provide in their proposal the name of the insurance company, the amounts of insurance, and the types of coverage included. This is purely information for the USMS and will not be released outside of the USMS. If any of these or other types of insurance are purchased, the Government's liability *under the Federal Torts Claim Act for damage of insured items shall be limited to the value of the deductible under that* insurance policy.

## 3. GENERAL INSURANCE COVERAGE

a. The contractor shall procure and maintain at his expense during the entire period of performance under this contract adequate insurance as follows:

1. $100,000 per incident minimum Workman's Compensation and Employees Liability Insurance.

2. General public liability insurance covering all duties, services, and work to be performed under this contract. The insurance shall provide limits of liability for bodily injury not less than $150,000 per person and $500,000 for occurrence, and property damage limits of liability of not less than $50,000 for each accident. The general liability policy shall name "the United States of America, action by and through the Department of Justice", as an additional insured with respect to operations performed under this contract.

3. Automobile Liability Insurance written on the comprehensive form of policy of $200,000 per person and $500,000 per occurrence for bodily injury, and $20,000 per occurrence for property damage.

b. Policies under a.2. and a.3. shall contain a waiver of subrogation clause in favor of the Government by reason of any payment under these policies.

c. Each liability policy shall include the following provision:

"It is a condition of this policy that the company shall furnish written notice to the Department of Justice, in care of the issuing office, thirty (30) days in advance of any reduction in or cancellation of this policy."

d. Insurance shall be effective throughout the term of the contract. Upon request, the contractor shall furnish the Contracting Officer as evidence of required insurance, certified true copies of liability policies and any changes thereto. Renewal policies shall be furnished not less than five (5) days prior to the expiration of current policies.

## 4. NOTICE TO THE GOVERNMENT OF DELAYS

In the event the Contractor encounters difficulty in meeting performance requirements, or when he anticipates difficulty in complying with the contract delivery schedule or completion date, or whenever the Contractor has knowledge that any actual or potential situation is delaying or threatens to delay the timely performance of this contract, the Contractor shall immediately notify the Contracting Officer, in writing, giving pertinent details, provided, however, that this data shall be informational only in character and that this provision shall not be construed as a waiver by the Government of any delivery schedule date, or any rights or remedies provided by law or under this contract.

Contract MS-03-C-0008

## 5. SUBSTITUTION OF AIRCRAFT

The contractor may furnish an aircraft in substitution of the aircraft initially furnished hereunder, provided that (i) the substitute aircraft conforms to all requirements of the contract and (ii) the approval of the CO is first obtained in writing.

## 6. CANCELLATION

NOTE: This clause is only applicable if Options A or B of Section I, D. The Schedule are selected for award.

52.217-2 — Cancellation Under Multi-Year Contracts.

As prescribed in 17.109(a), insert the following clause:

Cancellation Under Multi-year Contracts (Oct 1997)

(a) "Cancellation," as used in this clause, means that the Government is canceling its requirements for all supplies or services in program years subsequent to that in which notice of cancellation is provided. Cancellation shall occur by the date or within the time period specified in the Schedule, unless a later date is agreed to, if the Contracting Officer --
    (1) Notifies the Contractor that funds are not available for contract performance for any subsequent program year; or
    (2) Fails to notify the Contractor that funds are available for performance of the succeeding program year requirement.

(b) Except for cancellation under this clause or termination under the Default clause, any reduction by the Contracting Officer in the requirements of this contract shall be considered a termination under the Termination for Convenience of the Government clause.

(c) If cancellation under this clause occurs, the Contractor will be paid a cancellation charge not over the cancellation ceiling specified in the Schedule as applicable at the time of cancellation.

(d) The cancellation charge will cover only --
    (1) Costs --
        (i) Incurred by the Contractor and/or subcontractor;
        (ii) Reasonably necessary for performance of the contract; and
        (iii) That would have been equitably amortized over the entire multi-year contract period but, because of the cancellation, are not so amortized; and
    (2) A reasonable profit or fee on the costs.

(e) The cancellation charge shall be computed and the claim made for it as if the claim were being made under the Termination for Convenience of the Government clause of this contract. The Contractor shall submit the claim promptly but no later than 1 year from the date --

Contract MS-03-C-0008 .

(1) Of notification of the nonavailability of funds; or

(2) Specified in the Schedule by which notification of the availability of additional funds for the next succeeding program year is required to be issued, whichever is earlier, unless extensions in writing are granted by the Contracting Officer.

(f) The Contractor's claim may include —

(1) Reasonable nonrecurring costs (see Subpart 15.4 of the Federal Acquisition Regulation) which are applicable to and normally would have been amortized in all supplies or services which are multi-year requirements;

(2) Allocable portions of the costs of facilities acquired or established for the conduct of the work, to the extent that it is impracticable for the Contractor to use the facilities in its commercial work, and if the costs are not charged to the contract through overhead or otherwise depreciated;

(3) Costs incurred for the assembly, training, and transportation to and from the job site of a specialized work force; and

(4) Costs not amortized solely because the cancellation had precluded anticipated benefits of Contractor or subcontractor learning.

(g) The claim shall not include —

(1) Labor, material, or other expenses incurred by the Contractor or subcontractors for performance of the canceled work;

(2) Any cost already paid to the Contractor;

(3) Anticipated profit or unearned fee on the canceled work; or

(4) For service contracts, the remaining useful commercial life of facilities. "Useful commercial life" means the commercial utility of the facilities rather than their physical life with due consideration given to such factors as location of facilities, their specialized nature, and obsolescence.

(h) This contract may include an Option clause with the period for exercising the option limited to the date in the contract for notification that funds are available for the next succeeding program year. If so, the Contractor agrees not to include in option quantities any costs of a startup or nonrecurring nature that have been fully set forth in the contract. The Contractor further agrees that the option quantities will reflect only those recurring costs and a reasonable profit or fee necessary to furnish the additional option quantities.

(i) Quantities added to the original contract through the Option clause of this contract shall be included in the quantity canceled for the purpose of computing allowable cancellation charges.

## 7. OPTION TO EXTEND THE TERM OF THE CONTRACT (Mar 2000)
*NOTE: This clause is only applicable if Options B or C of Section I, B. The Schedule are selected for award.

52.217-9 -- Option to Extend the Term of the Contract.

Contract MS-03-C-0005

As prescribed in 17.208(g), insert a clause substantially the same as the following:

(a) The Government may extend the term of this contract by written notice to the Contractor within 30 days prior to expiration of the contract; provided, that the Government gives the Contractor a preliminary written notice of its intent to extend at least 60 days before the contract expires. The preliminary notice does not commit the Government to an extension.

(b) If the Government exercises this option, the extended contract shall be considered to include this option clause.

(c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed (10) ten years.

(End of Clause)

## 8. PROTESTS FILED DIRECTLY WITH THE DEPARTMENT OF JUSTICE JAR 2852.233-70 (JAN 1998)

(a) The following definitions apply in this provision:

(1) "Agency Protest Official" means the official, other than the contracting officer, designated to review and decide procurement protests filed with a contracting activity of the Department of Justice.
(2) "Deciding Official" means the person chosen by the protestor to decide the agency protest; it may be either the Contracting Officer or the Agency Protest Official.
(3) "Interested Party" means an actual or prospective offeror whose direct economic interest would be affected by the award of a contract or by the failure to award a contract.

(b) A protest filed directly with the Department of Justice must:
(1) Indicate that it is a protest to the agency.
(2) Be filed with the Contracting Officer.
(3) State whether the protestor chooses to have the Contracting Officer or the Agency Protest Official decide the protest. If the protestor is silent on this matter, the Contracting Officer will decide the protest.
(4) Indicate whether the protestor prefers to make an oral or written presentation of arguments in support of the protest to the deciding official.
(5) Include the information required by FAR 33.103(d)(2):
    (i) Name, address, facsimile number and telephone number of the protestor.
    (ii) Solicitation or contract number.
    (iii) Detailed statement of the legal and factual grounds for the protest, to include a description of resulting prejudice to the protestor.
    (iv) Copies of relevant documents.

Section III, Page 9 of 14

Contract MS-03-C-0008

(v) Request for a ruling by the agency.
(vi) Statement as to the form of relief requested.
(vii) All information establishing that the protestor is an interested party for the purpose of filing a protest.
(viii) All information establishing the timeliness of the protest.

(c) An interested party filing a protest with the Department of Justice has the choice of requesting either that the Contracting Officer or the Agency Protest Official decide the protest.

(d) The decision by the Agency Protest Official is an alternative to a decision by the Contracting Officer. The Agency Protest Official will not consider appeals from the Contracting Officer's decision on an agency protest.

(e) The deciding official must conduct a scheduling conference with the protestor within five (5) days after the protest is filed. The scheduling conference will establish deadlines for oral or written arguments in support of the agency protest and for agency officials to present information in response to the protest issues. The deciding official may hear oral arguments in support of the agency protest at the same time as the scheduling conference, depending on availability of the necessary parties.

(f) Oral conferences may take place either by telephone or in person. Other parties may attend at the discretion of the deciding official.

(g) The protestor has only one opportunity to support or explain the substance of its protest. Department of Justice procedures do not provide for any discovery. The deciding official may request additional information from either the agency or the protestor. The deciding official will resolve the protest through informal presentations or meetings to the maximum extent practicable.

(h) An interested party may represent itself or be represented by legal counsel. The Department of Justice will not reimburse the protester for any legal fees related to the agency protest.

(i) The Department of Justice will stay award or suspend contract performance in accordance with FAR 33.103(f). The stay or suspension, unless over-ridden, remains in effect until the protest is decided, dismissed, or withdrawn.

(j) The deciding official will make a best effort to issue a decision on the protest within twenty (20) days after the filing date. The decision may be oral or written.

(k) The Department of Justice may dismiss or stay proceeding on an agency protest if a protest on the same or similar basis is filed with a protest forum outside the Department of Justice.

## 9. USE OF NON-GOVERNMENT ADVISORS (N/A FOR THE CONTRACT) DELETED

## 10. LIQUIDATED DAMAGES

(a) If the Contractor fails to deliver the supplies or perform the services within the time frames specified in Section II, Part B., Maintenance Requirements Document of this contract, or any extension, the Contractor shall, in place of actual damages, pay to the Government as fixed,

Contract MS-03-C-0008

agreed, and liquidated damages, for each calendar day of delay the sum of one (1) day of flying as calculated by dividing the monthly contract price by the average number of work days in a month. For the purposes of this calculation the number of days in a month that will be utilized will be thirty (30).

(b) Alternatively, if delivery or performance is so delayed, the Government may terminate this contract in whole or in part under the Termination for Cause portion of the FAR clause 52.212-4 entitled Contract Terms and Conditions --Commercial Items incorporated herein. In that event, the Contractor shall be liable for fixed, agreed and liquidated damages accruing until the time the Government may reasonably obtain delivery or performance of similar supplies or services. The liquidated damages shall be in addition to excess costs under the Termination clause.

(c) The Contractor shall not be charged with liquidated damages when the delay in delivery or performance arises out of an excusable delay as defined in the FAR clause 52.212-4 entitled Contract Terms and Conditions --Commercial Items.

## 11. PERMITS AND LICENSES

In the performance of work hereunder, the contractor shall obtain and maintain in effect all necessary work permits, identification badges and licenses required by Federal, state or local government, or subdivisions thereof, or of any other duly constituted public authority. Further, the contractor shall obey and abide by all applicable laws and ordinance.

## 12. FACILITY ACCESS

Rights of Egress and Ingress. During the life of this contract, the rights of ingress to and egress from the Department of Justice facilities for the Contractor's representatives shall be made available as required. During all operations on Government premises, the Contractor's personnel shall comply with the rules and regulations governing the conduct of personnel and the operation of that facility. The Government reserves the right to require personnel to "sign-in" upon entry and "sign-out" upon departure from the Department of Justice facility.

## 13. SECURITY REQUIREMENTS

Within ten days of award of this contract, the contractor shall provide the USMS with a list of all employees, their dates of birth, place of birth, sex, race, social security number, drivers license number with state of issuance, current residence address, and places of residence for the past ten years. The contractor shall provide this information for all new employees or subcontractor employees within ten days of hiring and prior to the employee working at the facility. All information shall be used to obtain National Crime Information Center clearances. Any individuals found to have an arrest record, which is indicative of a security risk, shall not be allowed to work under this contract. The contractor has the right to replace that employee without penalty and shall submit the above required information within ten days of receiving

Contract MS-03-C-0008

notification from the USMS. The USMS reserves the right to perform full background checks on any contractor employee performing work on a USMS facility.

## 14. CONFIDENTIALITY OF DATA

Duplication or disclosure of data and other information to which the contractor will have access as a result of this contract, is prohibited by Public Law. It is understood that, throughout performance of the contract, the contractor will have access to confidential data, which is the sole property of the Department of Justice, as well as access to proprietary data which is the sole property of other than the contracting parties. The contractor hereby agrees to maintain the confidentiality of all such data to which access may be gained throughout contract performance, whether title thereto vests in the Department of Justice or otherwise. The contractor hereby agrees not to disclose said data, any interpretations thereof, or data derivative there-from, to unauthorized parties in contravention of the party in which title thereto is wholly vested.

## 15. TRANSITION PLAN

The contractor shall provide a plan for transition/implementation of the aircraft and maintenance to be provided under this contract. The transition plan shall contain both written plans for phase-in and phase-out.

    a. Phase-in Plan
The contractor shall provide a plan for mobilizing, training, observing and otherwise preparing to become fully operational in providing maintenance and logistics support. The phase-in plan should correlate this activity with the contractor's proposed aircraft delivery schedule. The phase-in plan must be provided to the contracting officer for review within thirty days after contract award. This plan shall separately address the following factors as a minimum and shall not be limited to the following:

        1. Show maintenance/logistics manning levels and how they will increase over the phase-in period to reach the full manning that will be attained.
        2. Describe management control of the phase-in activities by the contractor's staff.
        3. Describe your plan for dealing with contingencies which may arise during the phase-in that might prevent implementation of the original plan.
        4. Describe your plan for logistics support of the aircraft including the parts levels that will be established, timeframes for putting the store of parts in place for each of the USMS operational sites, and the processes that will be used to accomplish these tasks.
        5. Describe your plan for assumption of responsibility for government furnished property and the timeframes by site for completion of this effort.

    b. Phase-out Plan

Section III, Page 12 of 14

Contract MS-03-C-0008

The contractor shall provide a plan for a phase-out period, in the event that the contractor is not selected for a follow-on contract, or the Government elects not to exercise any options to extend the performance period of the contract. The supplies/services being provided in this contract are vital to the Government and the continuity must be maintained at a constant level without interruption. The successor, another contractor or the Government, will require phase-in assistance. The contractor should be prepared to negotiate in good faith with the successor to ensure the continuity and consistency of the supplies/services being provided. The phase-out plan shall be submitted sixty days prior to the completion date of the contract or thirty days prior to the completion of an option, if the succeeding option is not exercised by the Government.

## 16. OVER AND ABOVE WORK

Over and above items consist of work for aircraft under this contract, not included in the scope and prices of the basic work items in the schedule, performed by the contractor at the request of the Contracting Officer. Work performed as over and above will be authorized by a bilateral contract modification IAW FAR 52.212-4(c). The pricing of over and above will be negotiated and established as fixed prices prior to commencement of the work.

## 17. CONTRACTING OFFICER'S TECHNICAL REPRESENTATIVE (COTR) JAR 2852.211-70 (JAN 1985)

(a) Mr. Donald Harris, Director Of Maintenance, JPATS, 5900 Air Cargo Road, Oklahoma City, Oklahoma 73159 (405) 680-3411 is hereby designated to act as Contracting Officer's Technical Representative (COTR) under this contract.

(b) The COTR is responsible, as applicable, for: receiving all deliverables, inspecting and accepting the supplies or services provided hereunder in accordance with the terms and conditions of this contract; providing direction to the contractor which clarifies the contract effort, fills in details or otherwise serves to accomplish the contractual Scope of Work; evaluating performance; and certifying all invoices/vouchers for acceptance of the supplies or services furnished for payment.

(c) The COTR does not have the authority to alter the contractor's obligations under the contract, and/or modify any of the expressed terms, conditions, specifications, or cost of the agreement. If as a result of technical discussions it is desirable to alter/change contractual obligations or the Scope of Work, the Contracting Officer shall issue such changes.

**The Clause at FAR 52.212-4, Contract Terms and Conditions — Commercial Items (MAY 2001) is hereby tailored as follows:**

*paragraph (a) Inspection/Acceptance is hereby supplemented at the end of the paragraph with the following information:*

*Prior to acceptance of the aircraft the USMS will conduct a complete inspection of the aircraft records. This inspection will include a review of all the Maintenance records including the*

Contract MS-03-C-0008

engine and auxiliary power unit (APU) records, and the airframe records, including all airworthiness directive (AD) compliances. Any discrepancies in the records discovered during this inspection must be corrected within 30 days after acceptance of the aircraft. A period of three working days will be required per aircraft for the records inspection, and the inspection will need to be performed at the location of the aircraft, which must be in the Continental United States. An aircraft flight test/demonstration flight is to be provided by the contractor demonstrating the takeoff and landing procedures and the enroute environment of the aircraft. The flight should take approximately 1.5 hours and will be performed by a contractor supplied pilot with one USMS pilot sitting in a pilot seat of the aircraft. All aircraft systems must be operational during the test flight and any discrepancies identified during the test flight must be corrected within three days after the test flight. Acceptance of the aircraft will not be considered complete until all system discrepancies have been corrected.

paragraph (k) Taxes is hereby replaced in its entirety by the following:

The contract price excludes all State and Local taxes, including but not limited to sales and/or use taxes and personal property taxes, levied on or measured by the contract, sales price or value of the aircraft furnished under this contract.

paragraph (n) Title is hereby replaced in its entirety by the following:

Due to the fact that this contract is for the lease of aircraft, no transfer of title of the aircraft to the Government will occur.

paragraph (o) Warranty is hereby supplemented at the end of the paragraph with the following information:

The Lessor warrants that: (A) Lessee shall have the right to quiet possession of the Aircraft during the Lease Term so long as Lessee is not in default; and (B) the Aircraft will meet the requirements set forth in Section II, Part A, Specification for Replacement Large Transport Aircraft, of the Request for Proposal, Solicitation MS-02-R-0012. The Lessee understands and agrees that the original manufacture's warranty on the aircraft, including engines and avionics equipment, has expired. Thus, there is no manufacturer's warranty coverage offered or available on the aircraft.

Contract MS-03-C-0008

SECTION V.   52.212-5 –Contract Terms and Conditions Required to Implement Statutes or Executive Orders — Commercial Items (May 2002)

(a) The Contractor shall comply with the following FAR clauses, which are incorporated in this contract by reference, to implement provisions of law or executive orders applicable to acquisitions of commercial items:

   (1) 52.222-3, Convict Labor (E.O. 11755);
   (2) 52.233-3, Protest after Award (31 U.S.C 3553).

(b) The Contractor shall comply with the FAR clauses in this paragraph (b) that the contracting officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items or components:

   [Contracting Officer shall check as appropriate.]

   _X_ (1) 52.203-6, Restrictions on Subcontractor Sales to the Government, with Alternate I
       (41 U.S.C. 253g and 10 U.S.C. 2402).

   ___ (2) 52.219-3, Notice of HUBZone Small Business Set-Aside (Jan 1999).

   _X_ (3) 52.219-4, Notice of Price Evaluation Preference for HUBZone Small Business
       Concerns (Jan 1999) (if the offeror elects to waive the preference, it shall so indicate
       in its offer).

   ___ (4) (i) 52.219-5, Very Small Business Set-Aside (Pub. L. 103-403, section 304, Small
       Business Reauthorization and Amendments Act of 1994).

   ___ (ii) Alternate I to 52.219-5.

   ___ (iii) Alternate II to 52.219-5.

   _X_ (5) 52.219-8, Utilization of Small Business Concerns (15 U.S.C. 637 (d)(2) and (3)).

   _X_ (6) 52.219-9, Small Business Subcontracting Plan (15 U.S.C. 637 (d)(4)).

   _X_ (7) 52.219-14, Limitations on Subcontracting (15 U.S.C. 637(a)(14)).

   ___ (8) (i) 52.219-23, Notice of Price Evaluation Adjustment for Small Disadvantaged
       Business Concerns (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323) (if the
       offeror elects to waive the adjustment, it shall so indicate in its offer).

   ___ (ii) Alternate I of 52.219-23.

   ___ (9) 52.219-25, Small Disadvantaged Business Participation Program-Disadvantaged
       Status and Reporting (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).
   ___ (10) 52.219-26, Small Disadvantaged Business Participation Program-Incentive

Contract MS-03-C-0008

Subcontracting (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

_X_ (11) 52.222-21, Prohibition of Segregated Facilities (Feb 1999).

_X_ (12) 52.222-26, Equal Opportunity (E.O. 11246).

_X_ (13) 52.222-35, Affirmative Action for Disabled Veterans and Veterans of the Vietnam Era (38 U.S.C. 4212).

_X_ (14) 52.222-36, Affirmative Action for Workers with Disabilities (29 U.S.C. 793).

_X_ (15) 52.222-37, Employment Reports on Disabled Veterans and Veterans of the Vietnam Era (38 U.S.C. 4212).

_X_ (16) 52.222-19, Child Labor-Cooperation with Authorities and Remedies (E.O. 13126).

___ (17)(i) 52.223-9, Estimate of Percentage of Recovered Material Content for EPA-Designated Products (42 U.S.C. 6962(c)(3)(A)(ii)).

___ (ii) Alternate I of 52.223-9 (42 U.S.C. 6962(i)(2)(C)).

___ (18) 52.225-1, Buy American Act - Supplies (41 U.S.C. 10a-10d).

___ (19)(i) 52.225-3, Buy American Act - North American Free Trade Agreement - Israeli Trade Act - (41 U.S.C. 10a-10d, 19 U.S.C. 3301 note, 19 U.S.C. 2112 note).

___ (ii) Alternate I of 52.225-3.

___ (iii) Alternate II of 52.225-3.

___ (20) 52.225-5, Trade Agreements (19 U.S.C. 2501, et seq., 19 U.S.C. 3301 note).

_X_ (21) 52.225-13, Restriction on Certain Foreign Purchases (E.O. 12722, 12724, 13059, 13067, 13121, and 13129).

___ (22) 52.225-15, Sanctioned European Union Country End Products (E.O. 12849).

___ (23) 52.225-16, Sanctioned European Union Country Services (E.O. 12849).

___ (24) 52.232-33, Payment by Electronic Funds Transfer-Central Contractor Registration (31 U.S.C. 3332).

_X_ (25) 52.232-34, Payment by Electronic Funds Transfer-Other Than Central Contractor Registration (31 U.S.C. 3332).

___ (26) 52.232-36, Payment by Third Party (31 U.S.C. 3332).

Contract MS-03-C-0008

___ (27) 52.239-1, Privacy or Security Safeguards (5 U.S.C. 552a).

___ (28) (i) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (46 U.S.C. 1241).

___ (ii) Alternate I of 52.247-64.

(c) The Contractor shall comply with the FAR clauses in this paragraph (c), applicable to commercial services, which the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or executive orders applicable to acquisitions of commercial items or components:

[Contracting Officer check as appropriate.]

___ (1) 52.222-41, Service Contract Act of 1965, As Amended (41 U.S.C. 351, et seq.).

___ (2) 52.222-42, Statement of Equivalent Rates for Federal Hires (29 U.S.C. 206 and 41 U.S.C. 351, et seq.).

___ (3) 52.222-43, Fair Labor Standards Act and Service Contract Act -- Price Adjustment (Multiple Year and Option Contracts) (29 U.S.C. 206 and 41 U.S.C. 351, et seq.).

___ (4) 52.222-44, Fair Labor Standards Act and Service Contract Act -- Price Adjustment (29 U.S.C. 206 and 41 U.S.C. 351, et seq.).

___ (5) 52.222-47, SCA Minimum Wages and Fringe Benefits Applicable to Successor Contract Pursuant to Predecessor Contractor Collective Bargaining Agreement (CBA) (41 U.S.C. 351, et seq.).

(d) Comptroller General Examination of Record. The Contractor shall comply with the provisions of this paragraph (d) if this contract was awarded using other than sealed bid, is in excess of the simplified acquisition threshold, and does not contain the clause at 52.215-2, Audit and Records -- Negotiation.

(1) The Comptroller General of the United States, or an authorized representative of the Comptroller General, shall have access to and right to examine any of the Contractor's directly pertinent records involving transactions related to this contract.

(2) The Contractor shall make available at its offices at all reasonable times the records, materials, and other evidence for examination, audit, or reproduction, until 3 years after final payment under this contract or for any shorter period specified in FAR Subpart 4.7, Contractor

Contract MS-03-C-0008

Records Retention, of the other clauses of this contract. If this contract is completely or partially terminated, the records relating to the work terminated shall be made available for 3 years after any resulting final termination settlement. Records relating to appeals under the disputes clause or to litigation or the settlement of claims arising under or relating to this contract shall be made available until such appeals, litigation, or claims are finally resolved.

(3) As used in this clause, records include books, documents, accounting procedures and practices, and other data, regardless of type and regardless of form. This does not require the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.

(e) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c) or (d) of this clause, the Contractor is not required to include any FAR clause, other than those listed below (and as may be required by an addenda to this paragraph to establish the reasonableness of prices under Part 15), in a subcontract for commercial items or commercial components —

(1) 52.222-26, Equal Opportunity (E.O. 11246);

(2) 52.222-35, Affirmative Action for Disabled Veterans and Veterans of the Vietnam Era (38 U.S.C. 4212);

(3) 52.222-36, Affirmative Action for Workers with Disabilities (29 U.S.C. 793);

(4) 52.247-64, Preference for Privately-Owned U.S. Flag Commercial Vessels (46 U.S.C. 1241) (flow down not required for subcontracts awarded beginning May 1, 1996); and

(5) 52.222-41, Service Contract Act of 1965, As Amended (41 U.S.C. 351, et seq.).

(End of Clause)





Attachment III, Alexandria, LA Facilities

North Ramp

Hangar Area



Attachment IV, Mesa AZ Facility

WILLIAMS
GATEWAY
AIRPORT

FLOOR PLAN
BLDG 75
5919 S. SOSSAMAN ROAD

| SHEET | PRINT DATE: 06-26-01 | REQUESTED BY: |
| --- | --- | --- |
| 1 OF 1 | SCALE: NTS | DRAWN BY: MLC |

Parking

Ramp

Denotes Maintenance Contractor Are.

70'

170'

Office

Office

office

Customs

Office

Kitchen

Office

Rest Room

Rest Room

Storage

Mechanical Room

USMS
Warehouse

Computer Server Room

Rest Room

Maintenance Contractor Area

Contract MS-03-C-0008

# ATTACHMENT V
## GROUND SUPPORT EQUIPMENT
## OKLAHOMA CITY, OK

| Noun: | Part No: | Serial No: |
|---|---|---|
| Towbar | 01-1202-0000 | 1336219312 |
| 25 Ton Axle Jack | 02-7803-0100 | 1380489411 |
| 727 Fixed Stand | 04-6093-6080 | 010 |
| Hyd Mule | 05-7026-3611 | 1486529610 |
| Portable Hyd Svc | 06-4035-0500 | 1532219706 |
| CSD Svc Unit | 06-5022-6500 | 1466429606 |
| CSD Svc Unit | 06-5022-6500 | 1446179602 |
| JT8 Engine Stand | 106281 | ET1322 |
| 727 Towbar | 11630000 | 8709-831 |
| Potable Water Cart | 19-4300-0000 | 1484319610 |
| AC Hobart PWR Unit | 90J20P | 195PS01004 |
| Wheel Dolly/Cradle | 93765 | J765V31631 |
| Maintenance Stand | B-1 | 75-159 |
| Maintenance Stand | B-5 | 461B3 |
| Maintenance Stand | B-5 | 3056 |
| Forklift 15K | BF05H70V | BF05-300014 |
| 737 Towbar | F2161 | 38085 |
| 737 Towbar | F3161 | 38084 |
| Tow Tractor (Aircraft Tug) | MD250D | 16427 |
| Tow Tractor (Aircraft Tug) | SM50F | 17232 |
| Stair Truck (Air Stairs) | SP-818-SP | 29454 |
| DC-9 Towbar | STC 90772-1 | 022 |
| Genie Manlift | Z60/34 | 381 |

Contract MS-03-C-0008

## ATTACHMENT VI
## GROUND SUPPORT EQUIPMENT
## ALEXANDRIA, LA

| NOUN: | PART NO: | SERIAL NO: | BAR CODE: |
|---|---|---|---|
| De-Ice Machine (Cart) | --- | MS285 | --- |
| 90 KVA Generator Set (Deisel) | MGS-7 | 6177 | F00034 |
| Jack, Aircraft 10 Ton (Nose / Tail) | --- | 9762 | F00043 |
| Jack, Aircraft 20 Ton (Nose / Tail) | --- | 52H22937-2 | F00042 |
| Jack, Wing, 30 Ton | --- | --- | F00039 |
| Jack, Wing, 30 Ton | --- | --- | F00040 |
| Jack Pad, Nose | 4916701-1 | JP1 | --- |
| Jack Pad, Wing | AN6-5A | JP2 | --- |
| Jack Pad, Wing | AN6-5A | JP3 | --- |
| Aircraft Axle Jack, 30 Tons | 117D1100 JACK | 780 | F00041 |
| Hydraulic Mule, Skydrol | 05-7022-3400-81 | 1422029509 | F00048 |
| Push Back Tug | IG-40PT-9TUG | 10583 | F00033 |
| Tow Tractor | SM200 | 5018 | F00032 |
| Tow Bar, DC-9 | --- | 43082 | F00050 |
| Tow Bar, DC-9 | --- | 563 | F00053 |
| Lav Servicing Cart | LVC-250LP | PK100984 | F00099 |
| Washer, Pressure | 1337Washer | 61593 | --- |
| Dolley, Wheel / Brake | --- | 0181095 | --- |
| MD-4 Power Unit (Electric) | MD4-A700 | 373 | F00036 |
| MD-4 Power Unit (Electric) | MD4-A700 | 371 | F00218 |
| Maintenance Stand, B-4 | B-4MNT.STAND | --- | F00208 |
| Maintenance Stand | Extension | --- | F00059 |
| Cherry Picker | --- | D607 | F00078 |
| Huffer | 37660-0-31 | 5462 | --- |
| *Forklift* | ——— | *BH00400* | *F00100* |

Contract MS-03-C-0008

## ATTACHMENT VII
## GROUND SUPPORT EQUIPMENT
### MESA, AZ

| NOUN: | PART NO: | SERIAL NO: | BAR CODE: |
|---|---|---|---|
| Push Back Tug | JG-40PT-9 | 9157 | I59622 |
| *Tow Bar* | *727* | *29328* | *I59557* |
| Tow Bar DC-9 | 15F251 | 4S081 | H35179 |
| Air Conditioning Cart | 20DTE | 7263 | |
| Lav Servicing Cart | 10-6401-0010 | 1583419802 | H35137 |
| Maintenance Platform, B4A | B4A | 010 | I59621 |
| Maintenance Platform B1 | B1 | I59617 | I59617 |
| Maintenance Platform B1 | B1 | I59618 | I59618 |
| Washer, Hot Pressure | 761 | C450150197 | H35118 |
| Nitro Cart | 6061 | 1089 | H35053 |
| *Ground Power Unit* | —— | *301PS05900* | *F00186* |

Contract MS-03-C-0008

## ATTACHMENT VIII

### ADDITIONS
### TO OFFEROR'S MEL

|  | DOMESTIC | | INTERNATIONAL | |
|---|---|---|---|---|
|  | Installed | Required | Installed | Required |
| APU | 1 | 0 | 1 | 1 |
| Air Conditioning Packs | 2 | 1 | 2 | 2 |
| Tank Boost Pumps | Per MEL | | X | All |
| Generators | Per MEL | | 2 | 2 |
| Airstairs | Per MEL | | X | All |
| Thrust Reverser | Per MEL | | 2 | 2 |
| Start Valve | 2 | 2 | 2 | 2 |
| Lavatories | X | 2 | X | 2 |
| Anti Skid | Per MEL | | 1 | 1 |
| VHF Nav Receivers | 2 | 2 | 2 | 2 |
| VHF Communications | 2 | 2 | 2 | 2 |
| Baggage Fire Detection | Fully Functional | | Fully Functional | |
| Baggage Fire Suppression | Fully Functional | | Fully Functional | |
| Symbol Generators | Per MEL | | Fully Functional | |
| Transponder | 2 | 1 | 2 | 2 |
| Auto Pilot | Per MEL | | Fully Functional | |
| All EFIS & MFD Displays | Per MEL | | Fully Functional | |
| Weather Radar | 1 | 1 | 1 | 1 |
| IRS/GPS | Per MEL | | Fully Functional | |
| Auto Ground Spoiler System | 1 | 1 | 1 | 1 |